Good morning, Your Honors. Michael Kaufman on behalf of Petitioner Victor Molina. I'd like to reserve three minutes of my time for rebuttal. Your Honors, this case is fundamentally about the rule of law. In Vartelis v. Holder, the Supreme Court made clear that Mr. Molina was deported in violation of the immigration laws. The BIA itself has recognized that Vartelis established a fundamental change in law, and it has reopened final orders of removal based on Vartelis and other Supreme Court decisions for non-citizens who remain in the country illegally, and even for people who reenter the country illegally. But the first question you've got to really answer, Counsel, isn't it that a legal error is in effect a basis for equitable tolling? Yes, Your Honor, and we would submit that that is the case for three basic reasons, Your Honor. Do we have a case that says that? Well, this Court has said in Socop v. Gonzales, the en banc decision that first recognized the availability of equitable tolling for motions reopened, that the Petitioner indeed only showed that he was prevented from filing within 90 days by circumstances beyond his control. But really, we don't have a case that says a change of law after all the process is over is enough for equitable tolling, do we? Well, yes, Your Honor. This Court has analogized when interpreting... We've never put a case forward thus far that suggests the change of law amounts to a legal error, have we? In the immigration context, Your Honor, that's correct. However, this Court has looked to... So you're really looking then, the final civil judgment entered under a given rule of law? I think this Court, as it has done interpreting equitable tolling principles in the immigration context, has looked at habeas case law and Rule 60B case law as an analogy. And in the habeas context, courts have recognized... But even with the 60B motions, the relief sought in those cases was only to judgments applying prospective relief, wasn't it? No, not at all, Your Honor. That wasn't what this Court did in Bellevue Manor, for instance. There, it permitted a collateral attack under Rule 60B based on an intervening judicial decision issued after the final judgment in the case. There, it applied a civil rule retroactively, as this Court has done also in Phelps, another case applying Rule 60B in the civil context. Well, I guess I'll have to read the cases you just cited, because when I read the 60B motions and the relief sought, it really looks for judgments applying prospective relief, and I didn't find any prospective relief here. We're looking at retroactive relief. Yes, Your Honor, and I would submit that's precisely the circumstances in Bellevue Manor and Phelps. Those are cases in which this Court applied an intervening judicial decision and allowed the litigant to collaterally attack a final judgment based on that intervening decision issued after the final judgment in the case. This Course has also permitted that type of collateral attack in the habeas context. There, this Court has allowed equitable tolling of the statutory deadlines under AEDPA based on changes in law brought about by intervening judicial authorities. Is this – I just want to be sure that, you know, the retroactivity cases sort of, you know, surround the kind of affliction about whether the law has been changed or whether it's always been this way. Yes. And my understanding – maybe I'm confusing it with another immigration case – but that your argument is that essentially the law has always been what the Supreme Court has held. That is, it construed a statute, and under the Supreme Court's jurisdiction, when they construe a statute, it's as if the law has always been what they construed it so that the law has never changed. And that what happened here was simply an erroneous act by the BIA. That's correct, Your Honor. The Supreme Court was clear in Rivers, Boosley, and a long line of cases that when the Supreme Court interprets the meaning of a federal statute, it is interpreting what that statute has meant since the date of its enactment. And based on that fundamental principle, Courts have allowed collateral attacks on civil and final – civil and criminal final judgments based on intervening judicial decisions. This is even true – So now you're suggesting this is not a change in the law? Well, it is a change in the sense that the Supreme Court has now reversed the Ninth Circuit's case law that suggested that retroactive effects could not be established for someone who was convicted by virtue of a jury trial. However, this Court has applied intervening case law, considering the meaning of the immigration statutes, to allow collateral attacks. For example, when it comes to criminal prosecutions under 8 U.S.C. 1326 for illegal reentry, this Court permits defendants to collaterally attack their underlying removal order based on an intervening judicial decision entered after the time of their final order removal that indicates there was a legal error in this case. There's a long line of cases, both in this circuit and other circuits that we point to, that permit this. The BIA itself has even recognized that it will allow reopening via its sua sponte authority for fundamental changes in law brought about by intervening judicial authority. So the BIA agrees with Mr. Molina in this sense that, in some circumstances, a change in law should trump finality interests and allow a litigant, an immigrant, to collaterally attack their removal order based on an intervening judicial decision that indicates their removal order was entered in error. So if, in fact, one says that a legal error does not, cannot, be a basis for equitable tolling, is your case finished? No, Your Honor. We, Mr. Molina, advanced two sets of arguments as to why the BIA's decision was incorrect. First, because of the equitable tolling with respect to the statutory motion to reopen. We also argued that the BIA's denial of his request for sua sponte reopening based on the departure bar was incorrect for two different reasons. Well, just a minute. Let's examine that. Is there ever any place in the BIA's decision that suggests that they are suggesting they lack jurisdiction based on the departure bar?  They cite cases, but did they ever say anything about jurisdiction, that they lacked jurisdiction over that decision? Your Honor, the Board's decision cites the matter of Armendariz. I know what it cites to. What I did is read what it said. And when I read what it says, it doesn't seem to me that it says anything about a departure problem or a, if you will, a bar. It seems to me sua sponte they failed to reopen the case. And therefore, I lack jurisdiction to even do anything. Your Honor, the BIA has said in matter of Armendariz that it is the BIA's official position that it lacks jurisdiction to consider motions. Well, I understand what it says in that case. But I'm reading what it says in this decision. Yes, Your Honor. And in this decision, it says the respondent requests the Board to exercise its discretion sua sponte, sua sponte to reopen because of fundamental change. However, we're not going to do it. And if, in fact, sua sponte, they refuse to reopen, I don't have any jurisdiction to even look at that, do I? Your Honor, if it was true that the BIA had exercised, had made a discretionary determination not to exercise its sua sponte authority, it would violate its decision in matter of Armendariz. There it said the departure bar is a jurisdictional limit on its authority. And it could not, it knew Mr. Molina was outside the country, and it could not have considered his request on the merits if it believed what Armendariz says, that is, that it is a jurisdictional limit. If it really were saying that, didn't the BIA then rule on the equitable tolling issue here? And wouldn't that be inconsistent with its idea that it had no jurisdiction? Because it made a decision about equitable tolling, and therefore, it had to take jurisdiction of the case. And so, therefore, when it comes to the second issue, its sua sponte says, I'm not going to do anything with it. No, Your Honor, I respectfully disagree. This circuit has struck down the departure bar with respect to statutory motions to reopen, and therefore, the BIA could not assert that the departure bar applies to Mr. Molina's request for equitable tolling, which is under the statute. Now, the separate issue as to whether he could request them to use their sua sponte authority, there, this Court has not yet addressed the issue as to whether the departure bar continues to have validity with respect to its sua sponte authority. And there, the BIA, in light of that fact, continued to rely on it, inciting Armendariz and finding that it did not have jurisdiction here. There's nothing in the record to indicate that the BIA, in fact, considered any of the equities in this case, or any discretionary factors in considering its request for sua sponte reopening. It's simply — I read it somewhat differently than Judge Smith. They say, however, we find that another provision of regulatory provision, 8 CFR section 1003.2d, as well as our interpretation of that regulation, governs the resolution of this proceeding, and that since Respondent is no longer in the United States, we decline to exercise our sua sponte jurisdiction. I would say that they're saying that they decline to exercise their sua sponte jurisdiction because he's outside the United States, and therefore, they have no jurisdiction. That's how I would read that. I would agree, Your Honor. They cite the matter in Armendariz, which is a published decision of the BIA taking the position that it lacks jurisdiction to consider the request for sua sponte reopening for people outside the country. And they say this governs our decision. Exactly. So I don't think there's really any reasonable way to read that determination, except that they're saying we lack jurisdiction here. Now, I understand that the decision is brief, and it's difficult to sometimes tell exactly what the BIA is reasoning. So if it is brief, should we remand for clarification? Well, Your Honor, I think respectfully here, we'd ask the Court to decide it on the papers. And the decision that's issued, there are some Well, but it seems to me that we've said a few things about this since Armendariz. We've given a few, we've issued a few decisions about this particular issue. Armendariz has got its own, if you will, justification for what it does about this. Maybe we ought to give the BIA the chance then to look at our decisions, reconsider Armendariz, and then tell us what they're thinking and what they really said here, if we swallow what you've said. Yes, Your Honor. And evidently what my colleague is suggesting. Yes, Your Honor, the BIA's decision, excuse me, sorry, does cite to Coit and Reyes-Torres, which are the intervening Ninth Circuit case files that struck down the departure bar with respect to statutory motions. I'm not sure if the BIA remand is going to result in any different outcome here. And I would just ask this Court to consider the circumstances of Mr. Molina in our hope to resolve this case expeditiously. He's been located outside the country now for more than four years. His wife is very ill at the moment and going through some painful medical treatment, and he's really anxious, as is the family, to have the opportunity, if things go his favor in this case, to be reunited with the family. That's the only concern about lengthening things by a remand. But if we ordered a remand, would we have the authority to provisionally direct that in the interim he be readmitted? That's an interesting question, Your Honor. I'm not sure the answer off the top of my head. I would welcome the opportunity to brief the issue, though, if this is something that the Court would like to explore. I'd see that in my time, just to ensure that I have enough time before rebuttal is clicking off. I think you've hit the top questions right now. So, I mean, if you have other things to say, you can. But if you want to sit down, that's fine. Yeah, I'd like to reserve the balance of my time for rebuttal. Thank you, Your Honor. Good morning. Judge Gould, I'm sorry I didn't ask you if you had any questions. I'll get you a chance when he comes back.  All right. Good morning. May it please the Court. My name is Jocelyn Wright. I'm here on behalf of Respondent, the United States Attorney General. Let me first address Petitioner's argument regarding the equitable tolling. We agree that the Board had jurisdiction to determine its jurisdiction in this case. We agree. I'm sort of just troubled with putting all of this aside. This result strikes me as outrageous, the result that you're arguing for. It just seems so unfair and unjust and unreasonable. And as the President has said, he has discretion in enforcing the law. And of course, that discretion is normally exercised through the Attorney General. Has anybody stood back and actually looked at what the position is of the BIA and the government in this case? Well, Your Honor, we don't believe that this case is particularly outrageous because in his, when he left the United States in 2010 and executed his final removal order, he had been afforded all of the due process. The immigration judge, the Board. I know, but we now know, we now know that there was an error of law that was made in this case and that he should have never been subject to removal proceedings to begin with on the grounds that he was, that he had left the country. But when his removal order was entered and executed, it was valid under the law in effect at that time. I understand that, but that doesn't answer a question about whether the result is just unreasonable, but I won't push you on it. Well, in this case, Your Honor. I have a question for you, counsel. Yes, Your Honor. Isn't it the normal theory that when the Supreme Court interprets a statute, that it's saying what the statute has always meant? So therefore, if the BIA had a different interpretation from what Vartel has said, that its interpretation was a legal error. The first part of your question, I would agree with, Your Honor. And to the extent that the Board's previous interpretation may have been a legal error, the Supreme Court has clarified that they're not wrong according to some interpretive, as a matter of interpretive validity, but as a matter of the, as a function of the system that we are, that we resolve these types of issues in the judicial and the administrative adjudicatory system. So to that extent. So, so if it's an error to that extent, you know, why isn't a, an error of law sufficient for the BIA to consider reopening equitable tooling? In other words, why shouldn't we remand to the BIA and say, there was an error of law as to what the statute errata meant. An error of law can't support equitable tooling. We're not saying it's the only factor, but it's one, it is a factor. And the BIA could reopen. But why shouldn't we, why shouldn't we remand for the BIA to consider that? Because the Board has already considered whether equitable tooling is appropriate in this case, and it has concluded that it is not. It weighed the interests of finality against Mr. Molina's interest in getting his case reopened. And it's important to keep in mind that the reopening, that when Mr. Molina left in 2010, Dada was, was decided, Kukana was decided, Armendariz was decided. So he knew when he left that the only thing that would be available, there would be no, that the voluntary, that the departure bar would be applicable to his case. And so he couldn't get review of any error, no matter what he believed the error to be. So what? Because then he would have, he would have foregone. So you're going to say, in other words, as, as many people whose deportation is ordered if he had stayed in the country illegally, he would have been okay? No, Your Honor. Because again, motions to reopen have a temporal limitation to have to be filed within 90 days. And so, and again, Congress, when Congress codified that into the statute, it was, it was codifying. But I'm talking about, maybe I'm getting confused. I'm talking about the departure bar. Oh, okay. The departure bar, if he had been in the United States, the departure bar wouldn't have, wouldn't have impeded his, wouldn't have affected him. Well, that would have been one less impediment to getting his case reheard. Yes. Counsel, if we ordered, if we ordered the government to mediate with petitioner, would that be an exercise in futility? Or is there any chance the government could exercise discretion to agree to let him reopen his, his case?  But I, I certainly would be not opposed to putting the case in mediation to explore those possibilities. But I can't speak as to what those, those particular agencies will do once we've asked them to reconsider or to look at the case. Could I, could I put to you the question about our ability to order provisional, the provisional remedy of allowing, assuming we remanded to the, to the BIA, or even for mediation, whether we have the authority to provisionally order his reentry into the country? I don't believe so, Your Honor, because as it stands now, he has executed his order of removal and he's no longer a lawful permanent resident. The board would have to first reopen the case before the court, before he, he would have any type of legal status. I'm not talking about that. I'm talking about essentially, occasionally we stay lower court orders during oral, after oral argument here because we're sufficiently troubled by the, by the result that we may want to reverse. What I'm simply saying is as, as, as a kind of a stay or analogous to a stay, can we grant them provisional relief to be readmitted while we, while the case is remanded, for example, to the, to the BIA? I don't believe so, Your Honor, because a stay would preserve the status quo and the Well, I'm, there are, there are equitable relief that don't, that doesn't necessarily preserve the status quo. Let me ask you a related question and maybe, maybe the question I've asked has to be briefed. Would you object whether we, to that, would you object if we remanded to the BIA, whether and I'm putting aside the issue of our power, would, would the Attorney General of the United States while these proceedings go forward? I believe that we would object. I have to double check, but preliminarily, I believe that we would simply because the Attorney General doesn't have the authority to admit him to the United States. That is a function of the Department of Homeland Security, which is a separate agency, and that agency is not before this Court and is not a party to these proceedings. Let me ask you another question, which goes a little bit away from this. I tried my best reading the BIA's order to come up with what I suggest could have been the BIA's idea in making this order, where it says, the respondent requests the Board exercise its discretionary, sui sponte authority to reopen because a fundamental change in law occurred. Then it goes on, as my colleague read, how we find that another regulatory provision as well as our interpretation governs, since the respondent is no longer in the United States, we decline to exercise. Now, the only way that I saw the government could really argue that we should not remand this for a clarification of Armendariz plus Coit plus Reyes-Torres to come forth and tell us really what they're thinking is to suggest that they just made a sui sponte decision on reopening that had nothing to do with the bar. Can I reasonably suggest that that's the language here? I believe that's a fair reading of the Board's decision, Your Honor, and we argue that. How do I get around this idea that they continue to say, however we find another regulation, 8 CFR 103 2D, as well as our interpretation, then say Armendariz, seems to me my colleague's put to counsel, which was a friendly question, comes right now to you as a non-friendly question. It seems to me that the justification for the sui sponte, if you will, decision not to reopen is, in fact, the bar. Yes, Your Honor, and I understand the difficulty, the logic in that. However, the Board can't always rule in the alternative. When it says, since the respondent is no longer in the United States, we decline to exercise our sui sponte discretionary authority to reopen, they're not saying that we lack jurisdiction and so we're not going to reopen. You're reading that in isolation because they say its interpretation of that regulation governs the resolution of this proceeding, and it cites the matter of Armendariz and Ancest because he's no longer in the United States, which is relying on a legal requirement that he be in the United States. We decline to exercise our sui sponte discretionary authority. You know, there are ways that bureaucracies can play with language, but I read that as saying we don't have the, we don't have, we decline to exercise jurisdiction because we have no jurisdiction, and they're just playing with words here. But I disagree, Your Honor, because they don't say we lack jurisdiction. They say we decline to exercise our authority to reopen. And petitioners themselves have made the argument that under 1003.28, the reopening regulation, that the Board's authority to sui sponte reopen is not, and they made this argument to the Board, is not fettered by the departure bar. Only the grant, only its ability to consider motions made by aliens outside of the United States. And so to the extent that they made that argument to the Board, I think the Board was well within, it's a fair reading of the Board's decision for the Board to say, since we have, assuming that we have this unfettered authority under 1003.28, since the respondent is no longer in the United States, we consider that factor determinative for our purposes in refusing to exercise. I understand your point, but they say we rely on another provision other than A. But that sentence can't be reconciled with Armendariz's holding that it lacks jurisdiction to consider motions filed by aliens who have already been removed and are outside the United States. And related to that issue, I wanted to clarify the Board's use of the word jurisdiction. When the Board says that we lack jurisdiction, and as a categorical exercise of discretion, the Attorney General, we believe that that is an appropriate characterization of what the Board means when they say that they lack jurisdiction over motions to reopen. Because the Board's authority derives from the regulations that are promulgated by the Attorney General, Congress delegated the responsibility to the Attorney General to determine how motions to reopen should be, the procedures for motions to reopen, and how they should be adjudicated. The Attorney General, at the time her, her categorical exercise of discretion did not incorporate the departure bar, did not disavow the departure bar, I should say. So to the extent that the Attorney General can limit the Board's jurisdiction because the Board is only a creature of the Attorney General, then the Board was completely correct in saying that because the Attorney General has chosen to remove this category of cases from our ability to adjudicate motions to reopen, we lack the jurisdiction and the authority to grant Petitioner's motion to reopen because he has, because of the departure bar. So if we disagree as to the sua sponte authority here and say that it had all to do with the departure bar, should we remand for clarification? That's certainly one of the avenues open to the Court, Your Honor. What would you recommend in that instance? Well, we believe that the case can be resolved based on timeliness and finality. And then, of course, the alternative ruling that the Board has said since we lack jurisdiction, we decline to exercise our discretionary authority. I mean, sorry, not since we lack jurisdiction, but... It seems to me that one we could go through and suggest that this error of law, if you will, or change of law is, in fact, equitable tolling. It should be a basis for equitable tolling. If we get by that, if we go the government's way, nonetheless, we can say, well, the Board shouldn't have used its discretionary authority sua sponte to enforce matter of armandaris. We've since put together Reyes-Torres and Coit, and it seems to me that this is a situation which they should then discuss those particular issues and tell us what they think. Or maybe we ought to make a decision our own regarding the departure bar, which Coit and Reyes-Torres absolutely were. I want to make sure I understand Your Honor's question. You're saying if the Court agrees with the petition on the equitable tolling, then it should do... No, as I understand it, there are two things that are in front of us, the equitable tolling or the sua sponte authority discretionary to reopen, right? Two different issues. Well, as to the second issue, I would disagree. I don't think the Court has jurisdiction to review the Board's application of the sua sponte. Well, supposing we believe that this isn't a sua sponte, this is really just an application of armandaris, and we disagree. I don't think the Board has... I mean, the Court has jurisdiction to review application of armandaris. I think what the Court's jurisdiction would be limited to is whether the Attorney General, within his authority, within his discretion, has the authority to have the departure bar in place. But the Board's application of that with respect to the sua sponte authority... Well, don't you believe that the Board needs a chance to rethink about that, given Coit and Reyes-Torres, the applicability, application of armandaris-Torres? I believe that they have already said Reyes-Torres and Coit don't apply because those cases were factually different. They dealt with statutory motions to reopen. And it's important to also keep in mind, Coit was decided the same day that Kukana came out in the Supreme Court. And then Reyes-Torres followed Coit without discussing Kukana, whereas the Board in this case, in armandaris, has reconciled those three. And so the Ninth Circuit overlooked Kukana-Dada and all those cases, which say, and Kukana establishes, that the departure bar, the state of the departure bar when it decided Kukana remains the same as it did before ERIRA, which means before the statutory, before Congress codified, gave statutory weight to the temporal and numerical limitations for motions to reopen, but left the departure bar alone. So if, after Kukana, the departure bar remains pre-ERIRA, then the Board was completely correct when it said that it still applied to this case, because then the law has not changed. Do you have any other questions? My time is up. Thank you. Thank you, Your Honor. If you have some more time. Thank you, Your Honors. Just a couple of points. I'm glad counsel raised Kukana, because in Kukana and in Dada, the Supreme Court emphasized that the motion to reopen is, quote, an important safeguard intended to ensure a proper and lawful disposition in immigration proceedings. Consistent with that purpose, this Court in Lopez Velasquez, a unanimous en banc decision of the Ninth Circuit, instructed that when there's an intervening judicial decision that renders some deportation order invalid, quote, the proper remedy is for the alien to file a motion to reopen. That's precisely what Mr. Molina did here. We understand that. I guess the biggest problem I have with that argument is the only thing we said in Lopez Velasquez was that the motion to reopen is the right venue. But we didn't say, and besides that, give him equitable tolling. Sure. That's correct, Your Honor. But the petitioner in that, or excuse me, the defendant in that case had argued there that an intervening Ninth Circuit decision issued a year after his deportation order became final should render his underlying deportation order invalid. So there, if this Court was serious about the motion to reopen being available, it would have to rely on some sort of equitable tolling principle to be available to even the petitioner in that case. Well, frankly, I looked at Lopez Velasquez. I'll look at it again based on your argument. But I don't think that that was really what we were saying. Because I think he had a chance, even on the motion to reopen, without having equitable tolling to get to the result he wanted. That's true. But the petitioner there had illegally reentered the country and was subject to reinstatement of removal. The Court did deny his immigration case. But it was under someone who had broken the law by illegally reentering the country. And that's subject to a different set of immigration bars that are not applicable to Mr. Molina's case. More to the point, Your Honor, the petitioner has done literally everything in his power since the government first brought erroneous legal charges against him, literally everything in his power to ensure that the law was correctly applied in this case, throughout on direct review by appealing to the Ninth Circuit, to the Supreme Court. And then after Vartelis vindicated his arguments, he promptly filed the motion to reopen following this Court's instructions in Lopez Valdez's case. There's literally nothing else he could do to ensure that the law was correctly applied in this case. And the government's position that there's no remedy whatsoever available to him, as Judge Corman referred to, I confer, is an outrageous circumstance here, and certainly warranting the application of equitable tolling. Thank you. Counsel, counsel, I've got a question. Do we have jurisdiction to say that the board abused its discretion by not reopening, as opposed to us just saying the board could consider an error of law and remanding? In other words, could we make a ruling saying that the board should have considered an abusive discretion not to reopen in these circumstances? Yes. With respect to his equitable tolling argument, this Court certainly has the authority to find that Mr. Molina here established the prerequisites for equitable tolling, number one, that there was an error and that he's shown sufficient due diligence to warrant the application of equitable tolling. That's what this Court has done in a number of its cases applying equitable tolling case laws found in the circumstances of that individual case that the petitioner had met the standards this Court has laid out. That's all we ask here, that this Court, again, find there was an error here, he's been diligent, that's all this case law requires, and then remand to the BIA for them to then consider his motion to reopen on the merits. That's precisely what we're asking here. And if we take that route, we don't really have to get into the issues of sua sponte reopening, right? Yes, Your Honor, I would agree that if this Court finds that equitable tolling is warranted here and remands on that basis, then the issues of sua sponte don't need to be addressed by this panel. That's correct. Okay. Counsel, I would like you both to think about what my good colleague has suggested, and that is mediation in this particular matter. As you remember, there are two big issues here. Both of those are tough issues, and we've given you our best shot at both issues. We have tried to present to the government the problems that we have with government's argument, as well as suggest to you that we might have problems with your argument as well. And so therefore, we, I don't think there's any problem with every one of us, would love to have you do, look really hard at mediation. And I think as well, we would also like you within seven days to give us a brief about whether we have any authority regarding this petitioner in the meantime. In other words, Judge Corman's question as to whether there's any authority for us to try to do something in the meantime while you try to get this thing worked out. And if you could put us a brief, Judge Corman, if you'd like to give a better explanation of what you want the brief about, I'd love to have you do it. The issue is very, is what I suggested, is that if there's mediation or if we decide to remand, do we have the authority to order him to be, in the interim, to be returned to the United States? Certainly. And if you would please have those briefs simultaneously within seven days, we would appreciate that. 20 pages is plenty. Oh, Judge Gould's the presiding judge. No, that's fine. You can decide that. But I could not hear the government lawyers. She asked for a page limit. She asked what should be the page limit. I said 20 pages is adequate. Your Honor, we of course have no objection to pursuing mediation or any other possible route to resolving this favorably. I just, again, want to emphasize our concern here about this being resolved expeditiously, given the medical issues. We understand that. We understand that. Thank you, Your Honor. Government have any questions about that? Thank you very much. Case 12-73462, Molina de la Villa v. Holder is submitted.
judges: Korman, GOULD, SMITH